|  | IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA |

KRISHAN MANNERS,

    Plaintiff,

CASE NO.:

v.

VILLAGE OF BISCAYNE PARK,
FLORIDA, a municipal corporation,

    Defendant.

_____/

## COMPLAINT

Plaintiff, KRISHAN MANNERS, by and through the undersigned counsel, hereby sues Defendant, VILLAGE OF BISCAYNE PARK, FLORIDA ("Defendant"), and in support avers as follows:

### GENERAL ALLEGATIONS

1. This is an action by the Plaintiff for damages exceeding $30,000 excluding attorneys' fees or costs for unlawful, retaliatory discharge pursuant to Florida's public sector Whistleblower's Act, Fla. Stat. § 112.3187. ("Whistleblower's Act").

2. This Court has jurisdiction over Plaintiff's whistleblower claims pursuant to the Whistleblower's Act and pursuant to 42 U.S.C. §1983 of the Due Process Clause of the 14th Amendment.

3. Plaintiff was at all times relevant to this action, a resident of Broward County, Florida.

4. Defendant is located in Miami-Dade County, Florida where Plaintiff worked for Defendant, and is considered an "agency" under the Whistle-blower's Act.

5. Plaintiff is considered an "employee" under the Whistle-blower's Act because he at all

relevant times acted under the control and direction of Defendant.

6. Plaintiff alleges causes of action for violations of 42 U.S.C. §1983 as a result of the adverse treatment to which Defendant subjected Plaintiff, including but not limited to termination.

7. Venue is proper in Miami-Dade County because all of the actions that form the basis of this Complaint occurred within Miami-Dade County.

8. Declaratory, injunctive, legal and equitable relief are sought pursuant to the laws set forth above together with attorneys' fees, costs and damages.

9. All conditions precedent for the filing of this action before this Court have been previously met, including the exhaustion of all pertinent administrative procedures and remedies.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

10. Plaintiff began working for Defendant as a Public Services Manager on or about August 2014, and left Defendant briefly until on or about March 2017, when he came back and was brought on as Interim Village Manager.

11. On or about June 6th, 2017, Plaintiff was hired permanently by Defendant as Village Manager.

12. Throughout Plaintiff's employment, Plaintiff performed his duties in an exemplary fashion.

13. As Village Manager, Plaintiff was responsible to the Commission for the administration of all Village affairs and for carrying out the policies of the Village Commission.

14. The Village Commission serves as Defendant's form of government, and consists of five elected individuals, one of which is elected to sit as acting Mayor of the Village at the first meeting of each newly elected Commission.

15. As Village Manager, Plaintiff's duties included, but were not limited to, the following: (1) hiring, supervising, and removing all Village employees; (2) directing and supervising the

administration of all departments and offices; (3) attending all Commission meetings and having the right to take part in discussion; and (4) ensuring that all laws, provisions of the Village Charter and acts of the Commission, subject to enforcement and/or administration by him or by officers subject to his direction and supervision, were faithfully executed.

16. During Plaintiff's time working as Village Manager, it came to his attention that one of the members of the Village Commission, Daniel Samaria ("Samaria"), was living in a foreclosed home for some time while serving on the Commission.

17. Commissioner Samaria had held over his tenancy in his former residence for several years without paying his mortgage according to the terms of the note with his lender.

18. Samaria's lender, CARRINGTON MORTGAGE SERVICES LLC, instituted proceedings in the 11th Circuit of Miami-Dade County, Florida in September of 2016 against Samaria to foreclose on his residential property located in the Village of Biscayne Park.

19. Two years later, a final judgment of foreclosure was ultimately entered against Commissioner Samaria on September 12, 2018, divesting him of his property interest in his former residence and thereby causing him to not be in compliance with the Village Charter, Section 2.05(B)(1), which requires that members of the Village Commission have a permanent residence within the Village of Biscayne Park.

20. Samaria's former residence was purchased by his lender at the mortgage foreclosure sale on October 29, 2018.

21. When Plaintiff learned of this, he and the acting Village attorney sent a letter to Mr. Samaria requesting proof of his permanent residence in the Village.

22. In doing so, Plaintiff was abiding by his duty to ensure that all provisions of the Village's Charter were being followed and faithfully executed.

23. Section 2.05(B)(1) of the Village Charter states that the office of a Commissioner shall become vacant if at any time during his/her term he/she, "ceases to maintain his/her permanent residence in the Village."

24. After Mr. Samaria failed to provide proof of his permanent residence in the Village, Plaintiff was left with no choice but to disclose this information to the appropriate agency.

25. In January of 2020, the Village brought an action against Mr. Samaria, here in Miami-Dade County Circuit Court seeking the removal of Mr. Samaria from acting Commissioner.

26. After an emergency motion was filed to vacate an Omnibus Order granting a request for expedited proceedings, a hearing was held where the Honorable Judge Antonio Arzola denied the Village's request for removal of Mr. Samaria as Commissioner, finding that the action was not ripe.

27. The Court opined this because Mr. Samaria was technically still "residing" in his former home at the time of the hearing, despite the property being foreclosed and the ownership interest in the property being legally transferred to the Samaria's lender.

28. However, what was not known at the time by neither the Court nor the parties, was that the bank was executing the writ of possession issued by the Clerk of Court, changing the locks on the house, and forcibly evicting Mr. Samaria from adversely possessing the property in contravention of the court order and sale of his former residence. This meant that Mr. Samaria had no permanent residence in the Village and that he was not even legally allowed to reside on the property anymore.

29. After a writ of possession was issued by the Clerk of Court on December 31, 2019 in the Samaria foreclosure action granting possession of the residence to Samaria's lender, which rightfully purchased the property at the mortgage foreclosure sale on or about October 29,

2018.

30. A writ of possession was finally returned executed by the Sherriff of Miami-Dade County who forcibly removed Samaria from his adverse and illegal "hold-over" possession of his former residence in the Village of Biscayne Park on April 20, 2020.

31. Mr. Samaria's illegal behavior was not only in violation of the Village Charter but was also an intentional act of gross neglect of duty.

32. At all material times, Mr. Samaria was aware of the Village's residency requirements for acting Commissioners, and chose to disregard these requirements completely.

33. Following Judge Arzola's decision, Plaintiff was suspended by members of the newly elected Commission, which consisted of Virginia O'Halpin ("Ms. O'Halpin"), Donald Kennedy ("Mr. Kennedy") and Roxana Ross ("Ms. Ross").

34. Since their taking office, the newly elected Commissioners were determined to terminate Plaintiff's employment, to terminate the acting Mayor, Tracy Truppman and to terminate the Village's attorney.

35. The newly elected commission was successful in their mission, getting acting Mayor at the time, Ms. Truppman, to resign from her position, and also firing the Village attorney.

36. On or about March 9th, 2020, while under suspension, Plaintiff elected his right per the Village Charter to a name clearing process which was timely filed, and which included a scheduled hearing where Plaintiff would be allowed to give testimony to the Commission.

37. This "name clearing" hearing was, in actuality, a sham hearing which deliberately denied Plaintiff his due process rights with an opportunity to be heard regarding his duties as Village Manager.

38. The Commission would then decide by vote whether or not Plaintiff would be terminated.

At this hearing, Commissioner Ross was serving her first day as a Commissioner. Upon information and belief, Ms. Ross was working together with the newly elected Commission to find a way to terminate Plaintiff.

39. Pre-termination hearings under the due process clause provide an initial check against erroneous termination. The objective is to prevent the employee from unnecessary interruption of his primary source of income and the serious hardship that may result. Decisionmakers who participate substantially in the termination decision or who have other conflicts of interest are impermissibly biased against the employee. To preserve the public employee's due process rights, such decisionmakers should not be permitted to conduct pre-termination hearings as the Defendant did with the Plaintiff, Mr. Manners.

40. Commissioner Ross, among the other members of the Village Commission, was biased toward Plaintiff.

41. Commissioner Ross and the other members of the Village Commission had a conflict of interest in that they were biased toward Plaintiff due to his whistleblowing against Mr. Samaria's unlawful position with the Defendant.

42. At the name clearing hearing, Plaintiff was continuously interrupted by the Commissioners, and he was never given any opportunity to be heard to defend himself against the baseless accusations made against him in the performance of his duties as Village Manager, thus dismantling Plaintiff's due process rights under the 14th Amendment of the United States Constitution.

43. Ultimately, Defendant and the newly elected Commissioners terminated Plaintiff from his position as Village Manager on baseless allegations without allowing Plaintiff an opportunity to be heard.

44. Defendant's termination of Plaintiff was directly and proximately caused by Plaintiff disclosing information to an appropriate agency alleging improper use of office, and abuse or gross neglect of duty on the part of an employee, specifically, Samaria's violation of Section 2.05(B)(1) of the Village Charter in failing to legally maintain a residence in the Village of Biscayne Park.

45. Any rationale proffered by Defendant for Plaintiff's termination is mere pretext for unlawful retaliation for whistleblower activity.

## COUNT I
### *Retaliation under the Florida Public Whistleblower's Act*

46. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 through 45 of this complaint as if set out in full herein.

47. At all times material hereto, Defendant failed to comply with the Whistleblower's Act, which provides, in relevant part: "It is further the intent of the Legislature to prevent agencies or independent contractors from taking retaliatory action against any person who discloses information to an appropriate agency alleging improper use of governmental office, gross waste of funds, or any other abuse or gross neglect of duty on the part of an agency, public officer, or employee.

48. At all relevant times aforementioned, including at the time of Plaintiff's termination, Defendant, was aware of Plaintiff's rights as an employee, under Florida Laws and Regulations.

49. At the time of termination, Plaintiff was qualified for and able to adequately perform the essential job functions as required by Defendant and by the Village Charter.

50. Defendant's termination of Plaintiff's employment was directly and proximately caused by the Defendant's unjustified retaliation for Plaintiff's disclosing to the appropriate agency

violation of the Village Charter, Section 2.05(B)(1).

51. As a direct and proximate result of the Defendant's intentional conduct, Plaintiff suffered serious economic losses, as well as mental pain and suffering.

52. Any alleged justified reason for Plaintiff's termination asserted by Defendant is mere pretext for the actual reason—Plaintiff's disclosing of the aforementioned illegal activity.

53. The Defendant's actions were malicious and were recklessly indifferent to the Plaintiff's rights pursuant to the Whistle-blower's Act, which protects a public sector employee from retaliation for disclosing illegal conduct to an appropriate agency.

54. The aforementioned actions of Defendant were done wantonly, willfully, maliciously and with reckless disregard of the consequences of such actions.

**WHEREFORE**, Plaintiff respectfully requests that this court order the following:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practice which violates the Whistle-blower's Act;

B. Reinstate Plaintiff to the same position held before the retaliatory personnel action, or to an equivalent position, or in the alternative award Plaintiff front pay.

C. Reinstate full fringe benefits and seniority rights to Plaintiff;

D. Order Defendant to make Plaintiff whole, by compensating Plaintiff for lost wages, benefits, including front pay, back pay with prejudgment interest and other remuneration for physical and mental pain, anguish, pain and humiliation from being terminated due to objecting to illegal activity;

E. Award any other compensation allowed by law including punitive damages and attorney's fees and costs pursuant to Fla. Stat. § 112.3187.

## COUNT II
*Violation under 42 U.S.C. §1983 of the Due Process Clause of the 14th Amendment*

115. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1–45 above as if set out in full herein.

116. Under 42 U.S.C. §1983, "Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State…subjects, or causes to be subjected any citizen of the United States…to the depravation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law…"

117. Defendant, by virtue of being a municipality and/or local government is a considered a person under the 42 U.S.C. §1983.

118. Defendant has exercised power by virtue of state law because it is clothed with the authority of state law, to wit: Defendant terminated Plaintiff and deprived Plaintiff of his property right for continued employment.

119. On or about March 9th, 2020, the Village Commission, acting under color of law and vested with the final decision-making power, and in disregard of Plaintiff's due process rights, discharged Plaintiff arbitrarily and without cause and without prior notice ratifying the unlawful conduct of Defendant's managerial employees or officials.

120. As a result of Defendant's action who implemented and/or executed a policy statement, ordinance, regulation, or decision, Plaintiff was deprived of his rights to his property interest in his position as Village Manager of Biscayne Park.

121. Defendant's decision in terminating Plaintiff's employment with a sham hearing was the motivating force behind Plaintiff's depravation of rights.

122. Defendant deprived Plaintiff of his rights through the 14th Amendment's Due Process Clause which requires that a depravation of life, liberty, or property be preceded by notice and the opportunity to be heard.

123. In the present case, Defendant terminated Plaintiff and ended his employment with a sham hearing depriving Plaintiff of his property right of continued employment with Defendant.

124. Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant depraving Plaintiff of his rights, unless and until this Honorable Court grants relief.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

A. Adjudge and decree that Defendant has violated the Section 1983 and has depraved Plaintiff of his rights;

B. Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, benefits' adjustment, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

C. Enter an award against Defendant and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

D. Require Defendant to reinstate Plaintiff to the position at the rate of pay and with the full benefits Plaintiff would have had Plaintiff not been discriminated against by Defendant, or in lieu of reinstatement, award front pay;

E. Award Plaintiff the costs of this action, together with a reasonable attorneys' fees; and

F. Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## JURY DEMAND

Plaintiff demands trial by jury of all issues triable as of right by jury.

Dated: August 26th, 2020.

Respectfully submitted,

*/s/Peter M. Hoogerwoerd*
Peter M. Hoogerwoerd, Esq.
Fla. Bar No.: 0188239
pmh@rgpattorneys.com
Daniel J. Bujan, Esq.
Fla. Bar No. 1017943
dbujan@rgpattorneys.com
**Remer & Georges-Pierre, PLLC**
44 West Flagler Street, Suite 2200
Miami, FL 33130
(305) 416-5000- Telephone
(305) 416-5005- Facsimile